WETZSTEIN et ux, *Appellants,*
*v.*
HEMSTREET, *Respondent.*

555 P2d 1243

*Norman K. Winslow,* Salem, argued the cause and filed briefs for appellants.

*William E. Hurley* of Bernard, Hurley, Hodges & Kneeland, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Tongue, Bryson, and Lent, Justices.

BRYSON, J.

## BRYSON, J.

Plaintiffs purchased an unfinished home on 20 acres from the defendant builder. The agreement provided that defendant would complete the house as to work enumerated in exhibits attached thereto. The agreement also provided, "spring well flow to be not less than 5 gallon[s] per minute" and "buyer to give sixty (60) days notice prior to occupancy to permit seller to complete home."

Plaintiffs' complaint seeks damages for the reasonable cost of completing the residence and for the alleged breach of warranty with reference to the water supply.

The trial court, sitting without a jury, found "the parties agreed that defendant would not, himself, complete the residence; but he would pay, pursuant to 1972 prices, the amount necessary to complete the residence" and that "[t]he amount necessary to complete the residence is the sum of $2,689.50, which sum defendant agreed to pay" and that plaintiffs presented no substantial evidence to support their allegations of breach of warranty. The defendant's answer to the second amended complaint alleged:

> "When plaintiffs requested that the structure be completed, the sum required at 1972 prices was the sum of $2,445. To this sum, defendant added a miscellaneous contingency provision of 10 percent and offered to plaintiffs to pay the sum of $2,689.50."

The plaintiffs assert that

> "The trial court erred in denying the Plaintiffs any recovery for the 'reasonable cost of completion' of the residence purchased by them, in excess of the amount that the Defendant conceded would be necessary for completion."

This being an action at law, we assume that this assignment of error contends that there was no substantial evidence to support the trial court's finding on this issue.

The sale of the property was consummated in July, 1972, and plaintiffs were to give 60 days' notice to defendant to complete the house. At the time of sale, plaintiffs lived in California and were unable to move to Oregon until the middle of April, 1974. In the interim the house remained vacant and this fact caused most of the problems, culminating in the present litigation. The defendant testified:

"* * * I would rather just finish it right up. I had all my subcontractors lined up, everybody was ready to go. He asked me for an additional 60 days, he was afraid of vandalism. He was afraid somebody would break into his house, so he, that was the preference of his, not mine, by any means."

By letter of March 19, 1974, plaintiffs wrote defendant from California as follows:

"I will be in the area (Sheridan) on/about April 5th to further develop the property in anticipation of a move, hopefully, midsummer.

"* * * * *."

On June 11, 1974, defendant wrote plaintiffs (then in Sheridan, Oregon), "I am ready and willing to complete the job after being notified of the 60 days so agreed. * * * Most of your items I agree to, but not all."

The evidence shows that after the above exchange of correspondence both parties agreed that the plaintiffs would complete the house and that defendant would pay them, pursuant to 1972 prices, the required amount of money to accomplish the completion. On July 22, 1974, defendant provided plaintiffs with a list of the items he believed would complete the house under their modified agreement, accompanied by the estimated 1972 price for completion of $2,445. To this he added miscellaneous contingencies of 10% in the amount of $244.50 for a total of $2,689.50. Defendant's letter to plaintiffs offered to pay plaintiffs this sum in complete settlement of his obligations under the modified agreement. The plaintiffs refused the offer of settlement and filed the within action. Plaintiff

Arnold Wetzstein, on cross-examination, conceded that his appraiser had estimated that the house could be completed for $2,400 to $2,500 at 1975 prices and that this figure was later increased to $3,000 at plaintiffs' request. He also conceded that the work could be done at least $300 less in 1972 than in October, 1975, the date of the appraisal. Defendant, a builder with considerable experience, testified that the house could be completed for $2,445 at 1972 prices. This figure included $2,313 in bids received by defendant from subcontractors in 1972, when he thought the house was to be completed, and $132 for repairs and additions which he felt were not contemplated by the original agreement.

■ The trial court arrived at the sum of $2,689.50 as the 1972 cost of completing the house. We have reviewed all of the testimony and find there is substantial evidence to support the trial court's findings in this respect.

Plaintiffs next contend that the trial court erred in denying the plaintiffs any "damages based on the express agreement that the spring, which was the water supply for the residence purchased by the Plaintiffs, would produce not less than five gallons per minute." Plaintiffs offered no direct evidence revealing the water's rate of flow at the agreement date of July, 1972. The rate of flow was to be measured at the date of the agreement. The flow test conducted by plaintiffs, which revealed slightly less than the amount of water warranted, was conducted in 1975. The source of water for the tank and pump was a spring on property adjacent to the 20 acres purchased by plaintiffs, to which they were given an easement. There is testimony that the flow of water from the spring in 1975 was reduced by disuse and by plaintiffs' general failure to maintain the area and keep it clean around the spring. Defendant testified that he had used the water from the pump house to drink and for watering the trees; that he ran the water by a hose connected to a tap at the pump house into a five-gallon

bucket and by checking the flow with the second hand on his watch, "we got about 7 or 8 gallons a minute."

■ The findings and decision of the trial court, as the finder of the facts in an action at law, must be affirmed if supported by substantial evidence. *Williams v. Pilgrim Turkey Growers,* 264 Or 36, 38, 503 P2d 710 (1972). From our review of the transcript, there was ample evidence which, if believed by the trial judge as trier of the facts, supported his finding in favor of the defendant and against the plaintiffs on their claim for breach of warranty.

■ Plaintiffs also contend that the trial court erred in awarding the defendant a reasonable attorney fee as the "prevailing party" and in failing to award reasonable attorney fees to plaintiffs.

The plaintiffs argue that ORS 20.180, pertaining to "effect of tender as to costs," is controlling in the instant case and that defendant failed to comply with such statute in that he did not deposit the money in court and thereby keep the tender good, citing *Equitable Life Assur. Soc. v. Boothe,* 160 Or 679, 86 P2d 960 (1939).

The defendant contends that the "tender" statute, ORS 20.180, is not applicable and that this case is controlled by ORS 20.096, which provides:

"(1) In any action or suit on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, at trial or on appeal, shall be entitled to reasonable attorney fees in addition to costs and necessary disbursements.

"* * * * *.

"(3) As used in this section and ORS 20.097 'prevailing party' means the party in whose favor final judgment or decree is rendered.

"* * * * *."

This statute was enacted in 1971 and amended by the legislature, 1975 Oregon Laws, ch 623, sec 3(3).

This was an action on a contract which provided, "In any suit or action brought on this contract, the losing party agrees to pay the prevailing party therein (1) the prevailing party's reasonable attorney's fees * * *." In *Bruckman v. Breitenbush Hot Springs,* 272 Or 1, 9, 534 P2d 971 (1975), we held that the court should determine which party has in fact prevailed. In the instant case the trial judge's conclusions of law provided:

> "1. Plaintiffs, as a matter of law, failed to establish any claim beyond the $2,689.50; and a directed verdict would have been given for any sum in excess of that amount had the case been tried to a jury. Defendant's answer wherein he offered to pay the sum of $2,689.50 is the equivalent of an offer to compromise under ORS 17.055, and plaintiffs failed to obtain a more favorable result. *Defendant is, therefore, the prevailing party.* Defendant is entitled to a reasonable attorney's fee.
>
> "* * * * *." (Emphasis added.)

In *Gorman v. Boyer,* 274 Or 467, 472, 547 P2d 123 (1976), we held that the allowance of attorney fees, when provided for in a contract, are not costs and that "[t]he basis for allowance of attorney fees in such cases is different than in cases involving statutes which expressly provide that attorney fees may be allowed as a part of the costs of an action." ORS 20.180 provides only for the assessment of costs.

In the case at bar, the trial court specifically found that the defendant was the prevailing party and did not err in allowing attorney fees to the defendant.

The plaintiffs also assign as error the trial court's refusal to accept certain evidence going to the extent of plaintiffs' damages resulting from defendant's alleged breach of warranty. In view of our determination that the trial court did not err in holding that plaintiffs failed to prove a breach of warranty, it is not necessary to discuss these assignments.

Affirmed.